```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 01/05/2024
```

SAMUEL VILLATORO,

                Petitioner,

-against-

William JOYCE, in his official capacity as Acting Field Office Director of the New York Field Office, Immigration and Customs Enforcement; Alejandro MAYORKAS in his official capacity as Secretary of Homeland Security; Merrick GARLAND, in his official capacity as Attorney General,

                Respondents.

22 Civ. 6270 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Petitioner, Samuel Villatoro, has been detained by U.S. Immigration and Customs Enforcement ("ICE") since July 30, 2021. Pursuant to 28 U.S.C. § 2241, he seeks a writ of habeas corpus ordering Respondents to afford him an individualized bond hearing. For the reasons stated below, Villatoro's petition is GRANTED.

## BACKGROUND

    Villatoro is a citizen of El Salvador who has resided in the United States since 1989. Pet. ¶ 1, ECF No. 1. From 2003 to 2021, Villatoro was authorized to work in the United States and held Temporary Protected Status ("TPS"). *Id.* ¶ 10. His siblings all reside in the United States: two are United States citizens, and the other three also have TPS. *Id.* ¶ 11. His mother has immigrated to the United States as a lawful permanent resident. *Id.*

    On August 27, 2019, the Suffolk County Police Department "arrested Villatoro for sexual conduct against children who were under 13 years of age." Morrow Decl. ¶ 6, ECF No. 8. On October 8, 2020, in Suffolk County Court, he pleaded guilty to one count of disorderly conduct in

violation of N.Y. Penal Law § 240.20(7) and one count of second-degree sexual abuse of a minor in violation of N.Y. Penal Law § 130.60(2). *Id.*; *see also* ECF No. 7-1. Villatoro was sentenced to time served and six years' probation, and he is subject to a six-year final order of protection. Morrow Decl. ¶ 6; Gov. Opp. at 6–7, ECF No. 9.

On June 29, 2021, U.S. Citizenship and Immigration Services terminated Villatoro's TPS. Morrow Decl. ¶ 7; Gov. Opp. at 7; *see* ECF No. 7-2.

On July 30, 2021, ICE arrested Villatoro. Pet. ¶ 20; Morrow Decl. ¶ 8; Gov. Opp. at 7. Because ICE charged Villatoro with committing an "aggravated felony," 8 U.S.C. § 1101(a)(43)(A), it sought to deport him through expedited administrative removal proceedings under 8 U.S.C. § 1228(b).[1] Morrow Decl. ¶ 8.

While arresting him, ICE served Villatoro with a notice of intent to issue a final administrative removal order (the "Notice of Intent"). Morrow Decl. ¶¶ 9–10; Gov. Opp. at 7; ECF No. 7-3. ICE issued a final administrative removal order ("FARO") the same day, claiming that when ICE officers served Villatoro with the Notice of Intent, he "did not contest that he was removable as charged." Morrow Decl. ¶ 9; Gov. Opp. at 7; *see* ECF No. 7-4. Villatoro states that "[n]one of the agents spoke fluent Spanish," that he "is illiterate and does not speak English," and that he "was unable to read any of the documents provided to him." Pet. ¶ 21.

---

[1] Section 1228(b), which applies only to noncitizens who are not permanent residents and who may have committed aggravated felonies, authorizes the Government to "determine the deportability" of the noncitizen and "issue an order of removal" without requiring regular removal proceedings before an immigration judge, which are governed by 8 U.S.C. § 1229a. ICE may issue the removal order only after providing the noncitizen reasonable notice of the charges and an opportunity to inspect the evidence and respond. *Id.* § 1228(b)(4)(A), (C). Noncitizens subject to § 1228(b) proceedings are barred from seeking discretionary forms of relief such as asylum and cancellation of removal. *Id.* § 1228(b)(6); *see* 8 U.S.C. §§ 1158(b)(2)(A)(ii), (B)(i); 1229b(a)(3), (b)(1)(C). However, if they express fear of returning to their country of removal, they must be referred to an asylum officer to determine whether their fear is reasonable. 8 C.F.R. § 208.31(b). If the noncitizen passes the reasonable fear interview, then they proceed before an immigration judge for "withholding-only" proceedings. *See id.* § 208.31(e). If the officer rules that the noncitizen does not have an eligible reasonable fear, the noncitizen can appeal that decision to an immigration judge. *Id.* § 208.31(g). The noncitizen may seek judicial review before the Court of Appeals. *See* 8 U.S.C. §§ 1228(b)(3), 1252.

Villatoro did manage to "successfully convey" to the arresting officers "that he was afraid of persecution in El Salvador." *Id.* ¶ 23. On August 24, 2021, an asylum officer conducted a reasonable fear interview with Villatoro *pro se*. Morrow Decl. ¶ 17. Although the officer found Villatoro credible, the officer concluded that his risk of harm and torture in El Salvador was not connected to any protected characteristic and/or ground and, accordingly, rejected Villatoro's claim for fear-based relief from deportation. Pet. ¶ 24. Villatoro sought review before an immigration judge and obtained counsel. *Id.* ¶¶ 25–26. On September 28, 2021, the immigration judge affirmed the asylum officer's determination. *Id.* ¶ 26; *see* ECF No. 7-9.

On September 29, 2021, Villatoro filed a petition for review ("PFR") with the Second Circuit, challenging both the validity of the FARO and the immigration judge's rejection of his fear-based claim. *Id.* ¶ 27; *see Villatoro v. Garland*, Nos. 21-2456 and 21-6529 (2d Cir. filed Sept. 29, 2021). On October 1, 2021, Villatoro moved for a stay of removal; that motion is currently pending. Pet. ¶ 29. The PFR was fully briefed on June 14, 2022, and is also pending. *Id.* ¶ 27. On August 16, 2023, the Circuit granted the Government's motion to hold the case in abeyance pending decisions in two unrelated matters presenting similar issues. *See* Doc. No. 126, *Villatoro v. Garland*, No. 21-2456 (2d Cir. Aug. 16, 2023).

Following Villatoro's July 30, 2021 arrest, ICE detained him at the Hudson County Correctional Center in Kearny, New Jersey, and in October 2021, transferred him to the Orange County Jail in Goshen, New York. Pet. ¶¶ 5, 20; Morrow Decl. ¶ 8. ICE has reviewed Villatoro's continued detention two times in accordance with a COVID-19-related nationwide injunction then in place;[2] has conducted post-order custody reviews approximately every 90 days; and has reviewed

---

[2] *See Fraihat v. ICE*, 445 F. Supp. 3d 709 (C.D. Cal. 2020), *rev'd*, 16 F.4th 613 (9th Cir. 2021).

Villatoro's requests to be released. Gov. Opp. at 8–10. However, during Villatoro's nearly 30 months in detention, he has not received a bond hearing before an immigration judge. Pet. ¶ 30. Before the Court is Villatoro's petition seeking a bond hearing pursuant to 28 U.S.C. § 2241.

## DISCUSSION

### I. Statute of Detention

The parties first contest the statute under which Villatoro is detained. The Government argues that Villatoro is detained pursuant to 8 U.S.C. § 1231 because he is subject to a final order of removal. *See* Gov. Opp. at 12–19. Villatoro argues that he is detained pursuant to 8 U.S.C. § 1226(c) because ICE cannot execute the final order of removal as long as his motion to stay is pending before the Second Circuit. *See* Pet'r Mem. at 10–13; ECF No. 1-3. The Court agrees with Villatoro.

Section 1231 "addresses the logistics of removal for immigrants who have been 'ordered removed.'" *Hechavarria v. Sessions*, 891 F.3d 49, 54 (2d Cir. 2018) (quoting 8 U.S.C. § 1231). The statute requires the Government to remove noncitizens within 90 days of a triggering event, which the statute refers to as the "removal period." 8 U.S.C. § 1231(a)(1)(A).[3] The removal period begins on the "latest of the following":

> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order.
> (iii) If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement.

*Id.* § 1231(a)(1)(B). When a noncitizen files a petition for review with the Second Circuit and receives a stay, the second scenario applies, and the removal period does not begin until the Circuit

---

[3] The Government must detain noncitizens during the removal period. 8 U.S.C. § 1231(a)(2). If the Government is unable to remove the noncitizen during the removal period, it may continue to detain him only under certain circumstances set forth under statute. *Id.* § 1231(a)(6).

4

issues its final order. *Hechavarria*, 891 F.3d at 55–56. During the pendency of the Circuit's review, the noncitizen "cannot be detained pursuant to Section 1231." *Id.*

Villatoro, like the petitioner in *Hechavarria*, has an administratively final removal order, is seeking review of that order before the Second Circuit, and has not yet received a final order from the Circuit. However, there is one difference: the Circuit granted Hechavarria's stay motion, but Villatoro's remains pending. Villatoro is instead protected from removal by the Circuit's "forbearance policy." Pet. ¶ 29.

Under the forbearance policy, the Government "will not remove any [noncitizen] who has requested a stay of removal with a petition for review of an immigration order of removal unless a government motion opposing the stay is granted by the [Circuit] or the [noncitizen's] stay motion is otherwise denied." *Sankara v. Whitaker*, No. 18 Civ. 1066, 2019 WL 266462, at *4 (W.D.N.Y. Jan. 18, 2019). The Government may still seek to remove a noncitizen protected by the policy, but it must first "notify both the [Circuit] and Petitioner at least 21 days before removing Petitioner," which offers the Circuit sufficient notice to adjudicate the stay motion. *In re Immigr. Pets. for Review Pending in U.S. Ct. of Appeals for Second Cir.*, 702 F.3d 160, 161–62 (2d Cir. 2012); *see Yusuf v. Edwards*, No. 18 Civ. 3605, 2019 WL 4198798, at *3 (S.D.N.Y. July 2, 2019) (explaining that the Circuit did not immediately act on petitioner's stay motion, "likely in reliance on the [G]overnment's policy of forbearance," but entered a stay order shortly after the Government filed a notice of intent to remove). Without such a notification, "there is perforce no need for the Circuit to act on the noncitizen's stay application," as "[i]n function, [] a stay is in place." *Fajardo v. Decker*, No. 22 Civ. 3014, 2022 WL 17414471, at *8–9 (S.D.N.Y. Dec. 5, 2022); *cf. In re Immigr. Pets.*, 702 F.3d at 160–61 ("[I]t is wasteful to commit judicial resources to immigration cases . . . [when] adjudication of the

petition will be merely an empty exercise tantamount to issuing an advisory opinion." (citation omitted)).

The Circuit has not yet decided whether the forbearance policy constitutes a stay under § 1231. *Hechavarria*, 891 F.3d at 54 n.3. However, the "overwhelming majority" of judges in this district have ruled that the forbearance policy amounts to a court-ordered stay, such that § 1231 does not apply. *Doe v. Decker*, No. 21 Civ. 5257, 2021 WL 6066015, at *2 (S.D.N.Y. Nov. 19, 2021) (cleaned up) (collecting cases); *see Fajardo v. Decker*, No. 22 Civ. 3014, 2022 WL 17414471, at *8–9 (S.D.N.Y. Dec. 5, 2022); *Jack v. Decker*, No. 21 Civ. 10958, 2022 WL 4085749, at *6–8 (S.D.N.Y. Aug. 19, 2022), *report and recommendation adopted*, 2022 WL 16836918, at *1 (S.D.N.Y. Nov. 8, 2022); *Hernandez Aguilar v. Decker*, 482 F. Supp. 3d 139, 146 (S.D.N.Y. 2020); *Rodriguez Sanchez v. Decker*, 431 F. Supp. 3d 310, 315 (S.D.N.Y. 2019); *Alexandre v. Decker*, No. 17 Civ. 5706, 2019 WL 1407353, at *5–6 (S.D.N.Y. Mar. 28, 2019); *Heredia v. Shanahan*, 245 F. Supp. 3d 521, 524 (S.D.N.Y. 2017), *vacated on appeal as moot*, No. 17-1720, 2018 WL 1163180 (2d Cir. Jan. 2, 2018); *Rone v. Shanahan*, No. 15 Civ. 9063, 2016 WL 1047393, at *8 (S.D.N.Y. Mar. 10, 2016), *vacated on appeal as moot*, No. 16-1541, 2016 WL 7668454 (2d Cir. Nov. 15, 2016); *Argueta Anariba v. Shanahan*, 190 F. Supp. 3d 344, 350 (S.D.N.Y. 2016).[4] *But see Moscoso v. Joyce*, No. 22 Civ. 6272, 2023 WL 2016371, at *4–5 (S.D.N.Y. Feb. 15, 2023) ("[T]he forbearance policy is not a court-ordered stay.").

The Court agrees that the forbearance policy constitutes a stay for the purposes of § 1231(a)(1)(A)(ii). Section 1231's "removal period is dependent upon the assumption that no

---

[4] *See also Vazques v. Garland*, No. 21 Civ. 477, 2021 WL 3741589, at *2 (W.D.N.Y. Aug. 24, 2021); *Abdelwahab v. Barr*, No. 21 Civ. 6072, 2021 WL 2550820, at *3 (W.D.N.Y. June 22, 2021); *Vides v. Wolf*, No. 20 Civ. 6293, 2020 WL 3969368, at *6 (W.D.N.Y. July 14, 2020); *Falodun v. Session*, No. 18 Civ. 6133, 2019 WL 6522855, at *5 (W.D.N.Y. Dec. 4, 2019); *Fremont v. Barr*, No. 18 Civ. 1128, 2019 WL 1471006, at *2–3 (W.D.N.Y. Apr. 3, 2019).

substantive impediments remain to the immigrant's removal." *Hechavarria*, 891 F.3d at 55; *Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2285 (2021) (Section 1231 applies only when the Government is "free to remove" the noncitizen). But, pursuant to the forbearance policy, the Government cannot remove Villatoro unless (1) the Circuit denies his stay motion or petition for review, or (2) the Government gives notice to the Circuit and waits twenty-one days. The Government claims that the policy is merely "voluntary." Gov. Opp. at 18. The Government is incorrect. These barriers are imposed by binding Second Circuit case law, *In re Immigr. Pets.*, 702 F.3d at 161–62, and the orders entered by the Circuit in this action, Doc. Nos. 37-1 and -2, *Villatoro v. Garland*, No. 21-2456 (2d Cir. Nov. 10, 2021). Therefore, they "temporar[ily] set[] aside . . . the source of the Government's authority to remove"—the hallmark of a stay. *Nken v. Holder*, 556 U.S. 418, 429 (2009).[5]

Villatoro's detention is not governed by § 1231.[6] Instead, he is detained under Section 1226, which "governs the detention of immigrants who are not immediately deportable." *Hechavarria*, 891 F.3d at 57; *see Guzman Chavez*, 141 S. Ct. at 2289 (holding that detention falls under § 1226 when the proceedings concern "*whether* the [noncitizen] will be removed at all").

II. Constitutionality of Detention

A. Legal Standard

Section 1226 governs the detention of noncitizens who are facing removal proceedings.

---

[5] The Government's interpretation also contravenes the structure of the statute. Section 1231, which largely concerns the logistics of removal, applies when a noncitizen's removal is "both imminent and certain." *Hechavarria*, 891 F.3d at 55. It "make[s] no sense to classify [Petitioner] in the same section of the statute that governs the removal of [noncitizens] who have no remaining barriers preventing their immediate removal." *Id.* at 57. The Government's interpretation would transform "the Court of Appeals' policy of silence on stay motions"—a docket-management tool—into a "policy of denial." *Heredia*, 245 F. Supp. 3d at 524 (citation omitted).

[6] The Supreme Court's decision in *Johnson v. Guzman Chavez*, 141 S. Ct. 2271 (2021), holds that individuals in withholding-only proceedings after their removal orders have been validly reinstated are subject to detention under 8 U.S.C. § 1231. *See id.* at 2284. However, Villatoro is challenging the validity of his removal order in the first instance and is not solely seeking withholding-only relief. Therefore, *Guzman Chavez* is inapposite.

Generally, immigration detention is governed by § 1226(a), which requires the Government to provide a bond hearing before an immigration judge upon a noncitizen's request. *See Velesaca v. Decker*, 458 F. Supp. 3d 224, 235–36 (S.D.N.Y. 2020); 8 C.F.R. § 1236.1(d)(1).

The mandatory detention provision, § 1226(c), carves out an exception to this general framework. Noncitizens who have committed one or more predicate crimes—including an aggravated felony, 8 U.S.C. §§ 1226(c)(1)(B), 1227(a)(2)(A)(iii)—shall be detained "when . . . released" from criminal custody, *id.* § 1226(c)(1). Immigration authorities cannot release a noncitizen detained under § 1226(c) on bond, apart from the discretionary category where doing so is necessary for witness-protection purposes. *See Jennings v. Rodriguez*, 583 U.S. 281, 287–88, 304 (2018); *Sajous v. Decker*, No. 18 Civ. 2447, 2018 WL 2357266, at *1 (S.D.N.Y. May 23, 2018).

In *Demore v. Kim*, the Supreme Court upheld the constitutionality of the mandatory-detention scheme under § 1226(c), noting the "short[] duration" of detention under the scheme, which the Court found to last on average "a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the [noncitizen] chooses to appeal." 538 U.S. 510, 529–30, 523 (2003). When detention stretches beyond this short duration, courts in this district have considered constitutional claims brought on an as-applied basis. *See Hylton v. Decker*, 502 F. Supp. 3d 848, 853 (S.D.N.Y. 2020) (collecting cases).

The Supreme Court has said that, under the Due Process Clause, detention must "bear[] a reasonable relation to the purpose for which the individual was committed." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (cleaned up). To determine whether detention has become unreasonable or unjustified, courts in this district consider several factors, including:

> (1) the length of time the petitioner has been detained; (2) the party responsible for the delay; (3) whether the petitioner has asserted defenses to removal; (4) whether the detention will exceed the time the petitioner spent in prison for the crime that made him

removable; (5) whether the detention facility is meaningfully different from a penal institution for criminal detention; (6) the nature of the crimes committed by the petitioner; and (7) whether the petitioner's detention is near conclusion.

*Gonzalez Evangelista v. Decker*, No. 20 Civ. 8758, 2021 WL 101201, at *3 (S.D.N.Y. Jan. 12, 2021); *accord Melo v. Arteta*, No. 22 Civ. 9912, 2023 WL 5206890, at *4 (S.D.N.Y. Aug. 11, 2023).

    B. Analysis

Villatoro contends that his continued detention without a bond hearing violates due process. Based on the seven factors set forth in *Gonzalez Evangelista*, the Court agrees.

First, ICE has now detained Villatoro for over twenty-nine months. Pet. ¶ 1. By comparison, the Supreme Court noted that detention under § 1226(c) "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the [noncitizen] chooses to appeal." *Demore*, 538 U.S. at 529–30. And the Supreme Court identified six months of detention as "presumptively reasonable." *Zadvydas v. Davis*, 533 U.S. 678, 680 (2001); *see Demore*, 538 U.S. at 530–31. Detention beyond six months "is more likely to be unreasonable, and thus contrary to due process." *Garcia v. Decker*, No. 22 Civ. 6273, 2023 WL 3818464, at *5 (S.D.N.Y. June 5, 2023) (citation omitted). Courts in this district have regularly granted habeas relief when faced with much shorter terms of detention. *Id.* (seventeen months); *Vallejo v. Decker*, 2018 WL 3738947, at *4 (S.D.N.Y. Aug. 7, 2018) (noting that seventeen months was "to put it mildly, significant"); *Hylton*, 502 F. Supp. 3d at 854 (fourteen months); *Graham v. Decker*, No. 20 Civ. 3168, 2020 WL 3317728, at *5 (S.D.N.Y. June 18, 2020) (ten months); *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (seven months). The sheer length of Villatoro's twenty-nine-month detention strongly weighs in his favor.

Second, no party is individually responsible for Villatoro's delay. Villatoro promptly filed a PFR following the immigration judge's decision. The vast majority of Villatoro's detention has

9

occurred while his PFR has been pending before the Circuit, and the Circuit is now holding his PFR in abeyance pursuant to the Government's motion, not Villatoro's.[7]  Although Villatoro's appeal has prolonged his detention, the Court shall not penalize Villatoro for raising and investigating non-frivolous claims.  *See, e.g.*, *Garcia*, 2023 WL 3818464, at *5 ("[T]he mere fact that a noncitizen opposes his removal is insufficient to defeat a finding of unreasonably prolonged detention, and any delay associated with such opposition will not necessarily be attributed to him." (quotation marks and citation omitted)).  This factor, therefore, is neutral.

Third, Villatoro has asserted defenses to removal, seeking to terminate his removal order and to be granted an opportunity to pursue withholding of removal.  "The Court need not inquire into the strength of these defenses—it is sufficient to note their existence and the resulting possibility that [Villatoro] will ultimately not be removed, which diminishes the ultimate purpose of detaining [him]."  *Sajous*, 2018 WL 2357266, at *11.  This factor favors Villatoro.

The fourth and fifth factors also weigh in Villatoro's favor.  Villatoro received a time-served sentence for his conviction after being in custody for approximately five weeks—a period that his immigration detention has exceeded by nearly twenty-eight months.  Pet'r Reply at 10.  And, Villatoro has spent over 24 months of his detention in the Orange County Jail, which the Circuit has stated is not meaningfully different from criminal incarceration.  *See Velasco Lopez v. Decker*, 978 F.3d 842, 851–52 (2d Cir. 2020).

---

[7] In April 2023, Villatoro moved to hold the appeal in abeyance while he moved to reopen his case before ICE.  Doc. No. 100, *Villatoro v. Garland*, No. 21-2456 (2d Cir. Apr. 3, 2023).  This delay also resulted from Villatoro seeking to pursue his case, and he promptly notified the Circuit when ICE denied his motion to reopen.  *See* Doc. No. 115, *Villatoro v. Garland*, No. 21-2456 (2d Cir. Aug. 7, 2023).

Sixth, Villatoro pleaded guilty to one count of disorderly conduct and one count of sexual abuse of a minor. The sexual-abuse crime committed by Villatoro is serious and weighs in the Government's favor.

Seventh, Villatoro's detention is not near its conclusion. Although ICE says that it will promptly remove Villatoro if the Circuit denies his appeal, the Circuit is holding Villatoro's PFR in abeyance pending the resolution of two other cases for which briefing was just completed. Moreover, if the Circuit grants his PFR, it will likely remand the case to the immigration court for additional withholding-only proceedings, which Villatoro could then appeal administratively and again to the Circuit. *See Velasco Lopez*, 978 F.3d at 852. Villatoro has every incentive to continue to pursue his available defenses to deportation in order to remain in the United States, where he has lived for more than thirty years. *Rosario v. Decker*, No. 21 Civ. 4815, 2021 WL 3115749, at *3 (S.D.N.Y. July 20, 2021). Therefore, this factor also weighs in Villatoro's favor.

Five of the seven factors strongly favor Villatoro, one favors the Government, and the other factor is neutral. Ultimately, Villatoro requests not release, but a procedural protection: a bond hearing at which his continued detention would be scrutinized. In other words, "the question for this Court is not whether [Villatoro] is a flight risk or a danger to the community; it is whether the Due Process Clause entitles him to a hearing to determine those issues." *Yusuf v. Edwards*, No. 18 Civ. 3605, 2019 WL 4198798, at *9 (S.D.N.Y. July 2, 2019). "[T]he process due even to excludable [noncitizens] requires an opportunity for an evaluation of the individual's *current* threat to the community and his risk of flight." *Melo*, 2023 WL 5206890, at *7 (emphasis in original) (citation omitted). In light of his particular circumstances, Villatoro's continued detention violates due process.

11

As a remedy, Villatoro requests a "constitutionally adequate" bond hearing. Pet. at 1. "[A] clear and convincing standard of proof, and consideration of the ability to pay and alternative conditions of release[,] are conditions most often ordered as constitutionally necessary." *Doe*, 2021 WL 5112624, at *4 (collecting cases). The Court concludes that these considerations are appropriate here as well. The "overwhelming majority" of courts have concluded that the Government "must bear the burden of proof at a bond hearing by clear and convincing evidence," *Garcia*, 2023 WL 3818464, at *6 (collecting cases), because "the Supreme Court has consistently held the Government to a standard of proof higher than a preponderance of the evidence where liberty is at stake," *Hylton*, 502 F. Supp. 3d at 856. And, a bond determination "that does not include consideration of financial circumstances and alternative release conditions is unlikely to result in a bond amount that is reasonably related to the government's legitimate interests." *Rodriguez Sanchez*, 431 F. Supp. 3d at 317.

## CONCLUSION

For the reasons stated above, Villatoro's petition is GRANTED. By **January 19, 2024**, Respondents shall cause Villatoro to appear before an immigration judge for an individualized bond hearing. At the hearing, Respondents shall bear the burden of demonstrating, by clear and convincing evidence, that he is a danger to the community or a flight risk, and the immigration judge must meaningfully consider alternatives to detention and Villatoro's ability to pay. Should Respondents fail to afford Villatoro a bond hearing by **January 19, 2024**, Respondents shall release him immediately. The Clerk of Court is directed to close the case.

SO ORDERED.

Dated: January 5, 2024
New York, New York

_____
ANALISA TORRES
United States District Judge